**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0196-18T2

IN THE MATTER OF THE
ANNA GRUMME TRUST
U/W/O WILLIAM GRUMME,
DECEASED.

_____

Argued December 19, 2019 – Decided August 18, 2020

Before Judges Alvarez, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000208-17.

William D. Russiello argued the cause for appellant William Grumme, Jr. (Leslie & Russiello, attorneys; William D. Russiello, of counsel and on the briefs; Jeffrey Zajac, on the briefs).

Daniel L. Schmutter argued the cause for respondent Laurence Keiser, Trustee of the Anna Grumme Trust (Hartman & Winnicki, PC, attorneys; Daniel L. Schmutter, of counsel and on the brief; Tracey S. Bauer, on the brief).

Respondent Margaret Grumme has not filed a brief.

PER CURIAM

Defendant William Grumme, Jr. appeals from two August 6, 2018 orders of the Chancery Division granting summary judgment approving plaintiff trustee Laurence Keiser's final accounting of a trust of which William[1] is a beneficiary and dismissing William's exceptions to the accounting. We affirm.

I.

The following facts are derived from the record. William Grumme, Sr. died in 1991. His last will and testament (Will) placed his residuary estate in the Anna Grumme Trust (Trust) and designated his wife, Anna Grumme, and Jerome Gettelson, as co-trustees. The Will did not restrict or in any way specify the manner in which Trust assets were to be invested or managed by the trustees. Instead, the Will gave the trustees broad authority to "hold, manage, invest and reinvest" the assets in their discretion. In addition, the trustees had the right to "retain for such periods of time as they may deem advisable, any property . . . without being chargeable for any loss or depreciation which may result from such retention."

The Trust entitled Anna to its net income during her lifetime. Upon her death, the trust principal was distributable in equal shares to decedent's children, Margaret Grumme and William.

---

[1] Because the parties share a surname, we refer to them by their first names.

A-0196-18T2

As permitted under the Will, Gettelson resigned and appointed Keiser to replace him. However, the Will required "such appointment . . . be by a duly acknowledged writing filed with the [c]ourt in which [the] Will is admitted to probate." Although both Gettelson and Keiser signed a resignation and substitution, Anna did not, and the document was not acknowledged or filed with the court. Keiser did not apply to qualify as a trustee and no letters of trusteeship were issued to him.

Keiser acted as co-trustee with Anna for years, during which they discussed the Trust and his role as trustee multiple times. Anna never objected to or questioned Keiser's status as trustee.

In January 2010, Anna died. At that time, the Trust assets were invested in two instruments: $537,064.35 of PNC Financial Services Group stock and $332,786.86 in a Dreyfus Fund favoring technology stocks. Keiser certified that he understood the investment allocation to be Anna's preference during her lifetime.

On May 6, 2010, Keiser, upon learning of Anna's death, notified Margaret and William that he was the sole remaining trustee and was readying the Trust's assets for distribution. Shortly thereafter, Keiser received a letter from Margaret's attorney stating that the Will contained a specific bequest of

3

$100,000 to Margaret that she never received. The attorney requested Keiser delay any Trust distributions until Margaret resolved a suit she intended to file regarding her claimed bequest.

Since he expected a lengthy court contest between Margaret and William, Keiser, without the consent of either, sold the Trust assets and forwarded the proceeds to an investment firm. The firm placed the funds in a brokerage account with a more diversified portfolio. William claims he did not learn of the change of investment strategy until six months later.

On January 11, 2011, Keiser sent a letter to Margaret inquiring about her lawsuit, informing her that "[t]he funds are being maintained in a brokerage account[,]" and proposing that the beneficiaries discuss distribution. Margaret's attorney responded that she intended to file suit for her claimed bequest and requested Keiser continue to suspend distribution of the funds. Keiser also notified William that the Trust funds were being maintained in a brokerage account.

On May 26, 2011, Margaret filed suit in the Chancery Division, alleging she was entitled to a specific bequest of $100,000, which Anna, the executrix, never gave to her and had diverted into the Trust.

A-0196-18T2

On July 20, 2011, William sent a letter to Keiser demanding he distribute the Trust corpus immediately. On August 5, 2011, William's counsel sent a letter to Keiser instructing him to disregard William's letter and requesting he prepare an accounting of the Trust for the beneficiaries.

On February 17, 2012, the trial court issued an order restraining Keiser from making distributions from the Trust while Margaret's suit was pending. The beneficiaries settled the suit in June 2012. The court thereafter ordered Keiser to make distributions from the Trust in accordance with the settlement and to finalize administration of the Trust. On July 12, 2012, Keiser distributed $205,000 to Margaret, per the settlement.

On December 12, 2012, Keiser sent the beneficiaries an informal accounting of the Trust's assets and a receipt, release, indemnification, and refunding agreement. Neither beneficiary responded. Keiser sent the documents to Margaret and William again on February 15, 2013.

On February 28, 2013, Margaret's counsel replied, demanding the indemnification provision be removed and requesting further information. On March 1, 2013, Keiser produced the requested information, declined to remove the indemnification provision, and stated that in the absence of an agreement on indemnification, he would prepare a formal accounting and request judicial

5

approval.  On March 20, 2013, William's counsel sent Keiser a letter nearly identical to that sent by Margaret's counsel and Keiser responded in substantively identical fashion.

On September 17, 2013, Keiser informed the beneficiaries he would begin a formal accounting in preparation for a court filing if he did not hear from them in ten days.  After several failed attempts to negotiate resolution of the matter, Keiser retained counsel to conclude the trust judicially.

On October 19, 2016, Margaret filed an order to show cause in the Chancery Division seeking to compel a formal accounting and distribution of Trust assets.  Keiser joined Margaret's application.

On December 6, 2016, William responded with an order to show cause, requesting, among other things, an order: (1) restraining Keiser from making distributions from the Trust; (2) removing him as trustee; (3) appointing a replacement trustee; (4) compelling Keiser to repay the Trust for lost principal and profits from his mismanagement; and (5) awarding counsel fees and punitive damages.  The court allowed Margaret's action to proceed and William to raise his claims as exceptions to Keiser's accounting.

Keiser ultimately moved for summary judgment seeking approval of his final accounting, dismissal of William's exceptions, and permission to submit a

6

final calculation of his accounting and attorney's fees. William cross-moved for summary judgment on eight exceptions: (1) Keiser's decision to liquidate and reinvest the Trust corpus was unauthorized and caused lost profits, unnecessary taxes, and increased commissions; (2) the fees and commissions claimed by Keiser and his counsel are excessive or due to his mismanagement; (3) Keiser's legal and fiduciary fees are due to his mismanagement; (4) Keiser's final accounting should not be accepted; (5) Keiser should be discharged as trustee only after he compensates the Trust for his mismanagement; (6) Keiser's requested relief should be denied; (7) Keiser's expenses of $139,208.72 are illegitimate because they are the result of his mismanagement, and Keiser should be charged for damage caused to the Trust, punitive damages, interest, and attorney's costs and fees; (8) the Trust corpus of $515,103.01 is less than what it would be but for Keiser's re-allocation, and because the initial allocation if left undisturbed would have had a present day value of $2,229,028.90, Keiser should be charged the difference, $1,713,925.89.

On August 6, 2018, Judge James J. DeLuca issued a comprehensive written opinion granting Keiser's motion for summary judgment, approving the final accounting, denying William's cross-motion, and dismissing his

7

exceptions. The court ordered Keiser to submit a final calculation of professional fees incurred by the Trust since the date of the final accounting.

Judge DeLuca found no evidence of a breach of fiduciary duty by Keiser. To the contrary, he concluded based on established law and the trust document, Keiser had a duty to diversify the Trust corpus. The court explained,

> even granting William[] all favorable inferences for purposes of the instant motion and assuming that he never learned of the reinvestment until months after the fact, there still is no evidence of a fiduciary breach by Keiser. The statutory and case law permits and, indeed, requires a trustee to diversify trust assets. Under the Prudent Investor Act, N.J.S.A. 3B:20-11.1 [to] -11.12, "[a] fiduciary shall diversify the investments of the trust unless the fiduciary reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying." N.J.S.A. 3B:20-11.4 (emphasis added). Likewise, "[t]he trustee is under a duty to the beneficiary to exercise prudence in diversifying the investments so as to minimize the risk of large losses, and therefore he should not invest a disproportionately large part of the trust estate in a particular security or type of security." Commercial Trust Co. of N.J. v. Barnard, 27 N.J. 332, 343 (1958) (quoting Restatement (Second) of Trusts § 228, cmt. (a)).
>
> William['s] main argument to the contrary is that the Trust effectively ended upon Anna's death, extinguishing any trustee powers except in the course of effectuating the final distributions.

Yet, the court concluded, the provision of the Will on which William relies:

8

does not nearly contain the unambiguous command that William[] reads into it – it does not identify a date certain upon which the Trust terminates, it does not provide any deadline by which distributions must be made, and it does not limit the trustee's powers while he is accomplishing the named duties. Absent some manifest expression of the settlor's intent, Keiser's conduct was limited by only the underlying law. . . . This underlying law grants a trustee wide discretion to carry out the final administration . . . .

. . . .

In light of these clear authorities, the only legitimate basis upon which William[] could attack Keiser's reinvestment decision is that it was not a prudent financial move under the circumstances.

. . . .

[Keiser] sold the two securities and forwarded the proceeds to an investment firm "to be properly and safely invested during the litigation." William[] has supplied no evidence that this was anything but a conservative financial decision made by a trustee who is empowered to make just such a decision.

Judge DeLuca also rejected William's challenge to the legitimacy of Keiser's appointment as trustee. The judge found

[t]he record contains Keiser's extensive correspondence with the beneficiaries over several years, and it does not show any instance of Margaret, William[], or any of their attorneys questioning Keiser's status. To the contrary, the beneficiaries dealt with him as an ordinary trustee, asking him to make or delay distributions, to provide certain documents, and to account for his

activities – all acts that are within a trustee's exclusive purview.

The court concluded that

> William[] did not challenge Keiser's legitimacy until the instant action, and it would be inequitable for the [c]ourt to allow him to raise the argument now after Keiser carried out the substantive business of the Trust for years.
>
> . . . .
>
> If William[] or his prior counsel thought to investigate Keiser's letters of trusteeship before 2016, they would have discovered that no letters were ever issued. The [c]ourt therefore finds it just to conclude that William[] was at least constructively aware of the procedural defects in Keiser's appointment – he knew or should have known that the letters of trusteeship were not issued. He nevertheless accepted Keiser as trustee for more than six years, and he is equitably estopped from challenging now. . . . William[] took the position, both implicitly and explicitly, that he recognized Keiser as trustee. If he had indicated otherwise, Keiser would have had an opportunity to seek a judicial determination of his authority.

The court also noted the defects in Keiser's appointment were purely procedural and had "no bearing on his substantive fitness to serve as trustee or on the propriety of his conduct while in that role. To hold that Keiser was not a trustee would be to hold form over substance, a notion odious to equity."

10

Finally, the court rejected William's claim that Keiser converted the Trust assets. Judge DeLuca concluded Keiser was authorized to reinvest the corpus and did not exercise ownership rights over the property of another, given that a trustee holds legal title to the Trust assets. In addition, the court held that Keiser's reinvestment of the funds did not alter their condition or exclude any owner's rights to the property.

Two August 6, 2018 orders memorialize Judge DeLuca's decision. On August 24, 2018, the judge determined the fees and commissions requested by Keiser were legitimate and reasonable.

This appeal followed. William raises the following arguments for our consideration.

> POINT I
>
> THE CHANCERY DIVISION ERRED BY APPROVING THE VALIDITY OF KEISER'S UNILATERAL SALE AND REINVESTMENT OF THE TRUST CORPUS.
>
> POINT II
>
> IN THE EVENT THE APPELLATE DIVISION REVERSES THE CHANCERY DIVISION DECISION, THE ORDER AWARDING COUNSEL FEES AND COMMISSIONS TO THE TRUSTEE SHOULD BE VACATED.

A-0196-18T2

POINT III

THE CHANCERY DIVISION ERRED IN HOLDING
THAT THE DEFENDANT WAS EQUITABLY
ESTOPPED FROM CHALLENGING THE
LEGITIMACY OF KEISER AS TRUSTEE FOR THE
ESTATE.

POINT IV[2]

THE CHANCERY DIVISION ERRED BY HOLDING
THAT KEISER'S SALE AND REINVESTMENT OF
THE TRUST CORPUS DID NOT CONSTITUTE A
CONVERSION.

II.

"Our review of '[f]inal determinations made by the trial court sitting in a non-jury case . . . [is] limited and well-established.'" Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alterations in original) (quoting Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011)). The trial court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "[W]e do not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to

---

[2] Erroneously labeled as Point V.

12                                                         A-0196-18T2

offend the interests of justice." Ibid. (alterations in the original) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016)).

In addition, we review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529-30 (1995)).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent

A-0196-18T2

opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (citations omitted). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill, 142 N.J. at 523-24.

"The primary purpose of a trustee should be to preserve the trust estate, while receiving a reasonable amount of income, rather than to take risks for the purpose of increasing the principal or income. In other words, a trustee must be not merely careful and skillful but also cautious." Barnard, 27 N.J. at 343 (citations omitted). "The exercise of such 'care, skill, prudence and diligence' . . . requires a fiduciary to diversify investments 'so as to minimize the risk of large losses.' Therefore[,] a prudent fiduciary 'should not invest a disproportionately large part of [a] trust estate in a particular security or type of security.'" In re Will of Maxwell, 306 N.J. Super. 563, 585 (App. Div. 1997) (second alteration in original) (quoting Barnard, 27 N.J. at 343).

> While winding up administration of the trust, the trustee is to continue holding and administering the trust estate, except as one or more preliminary distributions can be made without interfering with the windup process.
>
> During the windup period the trustee has a duty . . . to preserve and manage the trust property.

A-0196-18T2

[Restatement (Third) of Trusts § 89 cmt. c (Am. Law Inst. 2012).]

Having carefully considered William's arguments in light of these principles, we affirm the August 6, 2018 orders for the reasons stated by Judge DeLuca in his thorough and well-written opinion. As Judge DeLuca concluded, Keiser's duties as trustee did not end upon Anna's death. He had a fiduciary responsibility to distribute the corpus of the Trust. However, in light of Margaret's suit claiming entitlement to a specific bequest, the trial court ordered Keiser to refrain from distributing the Trust's funds. As trustee, Keiser had the authority to exercise his discretion with respect to diversifying the Trust's assets while awaiting resolution of Margaret's suit. We note, as did Judge DeLuca, Keiser's many attempts to effectuate the distribution of the Trust's assets sooner were frustrated by the inaction and ongoing disputes of the beneficiaries.

We also agree that the defects in Keiser's appointment as trustee were procedural in nature and did not touch upon his qualifications or ability to serve as trustee. We see no error in the trial court's conclusion that Keiser was the "de facto trustee in all respects[,]" that Anna acquiesced in Keiser's exercise of authority as her co-trustee, and that William did not challenge the legitimacy of

15

Keiser's appointment until he was dissatisfied with Keiser's investment decisions after a long period of acknowledging Keiser as a trustee.

To the extent we have not specifically addressed any of William's remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.[3]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3]  William argues the August 24, 2018 order awarding fees and commissions should be reversed only if we reverse the August 6, 2018 orders.

A-0196-18T2